# UNITED STATES DISTRICT COURT
## FOR THE
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RUSSELL G. FETCHO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 3:12-cv-904 (GWC) |
| | ) | |
| HEARST CONNECTICUT POST, LLC, | ) | |
| D/B/A CONNECTICUT POST, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER RE:
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
### (Doc. 35)

Plaintiff Russell Fetcho has filed suit against his former employer Hearst Connecticut Post, LLC ("Hearst"). He alleges age discrimination under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.*, and the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46a-58(a) *et seq*. He also alleges state-law claims of retaliatory discharge and intentional infliction of emotional distress.

## I.      Facts

Plaintiff started work for a newspaper called the Connecticut Post (the "Post") in 1972 at age 18. He first worked for one year as a proofreader in the Advertising Department. He soon advanced to a sales position. He spent his career at the Post in advertising sales. His employment at the Post ended in the spring of 2010.

In May 2010, plaintiff became involved in a dispute with his supervisor Terri Sells. The parties tell two different versions about how the disagreement arose.

The Post states that plaintiff failed to respond to an email from one of his accounts—the Bridgeport Hospital. (Doc. 35-15 at 3.) The Post has supplied copies of emails which show that on May 12, 2010, an advertising staff member at the Post sent the hospital a draft of a proposed classified ad concerning a physician's retirement. (Doc. 35-5.)

1

On Friday, May 21, 2010, after normal business hours, the hospital's representative sent plaintiff an email approving the ad and requesting that it appear twice in successive weeks in order to comply with the rules concerning public notice of a physician's retirement.  (*Id.* at 2.)

On Tuesday, May 25, 2010, the hospital's representative followed up with an email to plaintiff complaining that she had not received a response to her email the previous Friday.   The email states:

> Russ,
>
> I sent this to you last week—and have not heard back—even a confirmation that the attached ad has been placed.   We lost time with the Post's production department with our original request—and it is imperative that this be placed—given that we have lost time.   This is not the way I was hoping this new relationship would proceed.
>
> Please confirm for me that you received this and this it is being handled.

(*Id.*)   The Post's publisher John DeAugustine was also copied on this email.  Mr. DeAugustine forwarded the email to plaintiff's supervisor Terri Sells who immediately sent an email to the hospital confirming that the ad would be placed in the Post as requested.  (Doc. 35-6 at 2.)

The next morning, May 26, 2010, Ms. Sells asked plaintiff about the unanswered email from the hospital's representative.  Plaintiff told her that he did not receive the May 21 email. The plaintiff became angry and stated that he could not stand the "micromanaging" of his performance.  He swore once and left the meeting. (Doc. 35-15 at 4.)  Ms. Sells complained to Mark Aldam who was her superior at the Post.  Mr. Aldam and Ms. Sells met with plaintiff who became upset and angry.  Plaintiff offered to resign and was offered four weeks' severance pay plus health benefits if he assisted with a smooth transition of his assignments.  (Doc. 35-1 at 9; Doc. 35-9 at 4.)

Later on the same day, plaintiff met twice with John DeAugustine, publisher of the Post, to discuss his employment and resignation.  Plaintiff complained about Mr. Aldam's demanding and abrupt personal style.  Plaintiff agreed to resign.  (Doc. 45-9 at 4.)  In a final meeting with Mr. DeAugustine on May 28, 2010, plaintiff stated that he had never complained about Mr. Aldam previously.  (Doc. 35-11.)  Plaintiff's employment came to an end around June 1, 2010.

Plaintiff's version of these events is different.  He states that he never received the May 21 email from the Bridgeport Hospital and therefore had no reason to respond to the hospital on May 24 or 25.  (Doc. 43-4 at 1.)  When he explained this to Ms. Sells at their first meeting on May 26, she demanded to see his computer.  (*Id.* at 4.)  Plaintiff stated that it contained no emails because he routinely deleted his email inbox in order to permit the outdated system to function.  (*Id.*)  He had already deleted the emails from the time in question.  Ms. Sells used this incident to create a complaint which resulted in accusations by Mr. Aldam of poor job performance and poor attitude.  Plaintiff states that at the initial meeting with Mr. Aldam and Ms. Sells, he criticized Mr. Aldam's management style.  He denies that he resigned.  He states that he was involuntarily terminated.  (*Id.* at 4-5.)

Plaintiff attributes his termination to age discrimination.  He was fifty-six years old at the time of termination.  He finds factual support for his claim of discrimination in the following ways:

- Ms. Sells concocted the story about the missed email in order to harass the plaintiff and, after plaintiff reacted strongly to her criticism, immediately referred the dispute to Mr. Aldam.

- In his first conversation with the plaintiff following the complaint from Ms. Sells, Mr. Aldam falsely accused the plaintiff of poor job performance and poor attitude.  He did so because the plaintiff complained that he had been unfairly criticized by Ms. Sells.

- The plaintiff also complained to Mr. Aldam about Mr. Aldam's abrupt and disrespectful management style.  He told Mr. Aldam that he had retained an attorney.  The plaintiff had previously complained to others in management at the Post about Mr. Aldam.  Mr. Aldam retaliated against the plaintiff for making these complaints and for hiring an attorney by terminating plaintiff's employment.

- Three other employees—Stewart Lahey, Ray Sbrega, and Kim Boath—have all committed more serious offenses than plaintiff's use of profanity without being terminated.

- At the time of termination, plaintiff was the oldest and most senior employee at the Post. With few exceptions, all others had been terminated or retired by the defendant. In other departments at the Post, older employees were offered retirement agreements. No such agreements were offered to employees in the classified advertising department where plaintiff was employed.

(Doc. 43-1 at 2-4.)

## II.    Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A factual dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A party asserting that a fact is genuinely disputed must cite to "particular parts of materials in the record, including[,] [*inter alia*,] depositions." Fed. R. Civ. P. 56(c)(1). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Redd v. N.Y. State Div. of Parole*, 678 F.3d 166, 173-74 (2d Cir. 2012).

The burden is on the moving party to show that it is entitled to summary judgment. *Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2004). The non-moving party receives the benefit of favorable inferences drawn from the underlying facts. *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996). However, allegations that are "conclusory and unsupported by evidence of any weight" are insufficient for the non-moving party to withstand a motion for summary judgment. *Smith v. Am. Express Co.*, 853 F.2d 151, 155 (2d Cir. 1988). "If the party moving for summary judgment demonstrates the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor." *Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp.,* 302 F.3d 83, 91 (2d Cir. 2002).

### III.    Analysis

In ruling on defendant's motion for summary judgment, the court is required to accept all statements by the plaintiff as factually true except for those statements which are demonstrably false or mistaken.  Certain allegations are demonstrably untrue.  These are that Mr. Lahey, Mr. Sbrega and Ms. Boath are younger than the plaintiff and that he is the oldest or most senior employee remaining at the Post.[1]

The court accepts as true the sworn declaration of Cheri Panzica, Human Resource Manager at the Post since 2009, that at the time of the plaintiff's termination, 18 of 55 employees in the Advertising Department were older than plaintiff.  (Doc. 35-2 at 3.)  The court also accepts as true the employment record supplied by the Post indicating that Mr. Lahey was 84 years old and Mr. Sbrega 58 at the time of plaintiff's termination.  (Doc. 35-4.)  These are objective and readily verifiable statements of fact which are not rebutted by record evidence offered by plaintiff.  In all other respects, the court accepts the plaintiff's allegations as true for purposes of the motion.

The plaintiff makes claims under both state and federal law.  The court will consider each separately.

### A.    Claims under the Age Discrimination in Employment Act

In 1967, Congress passed the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.* (the "ADEA"), in order to address the unfairness experienced by "older workers [who] find themselves disadvantaged in their efforts to retain employment, and especially to regain employment when displaced from jobs." 29 U.S.C. § 621(a)(1).  The ADEA prohibits workplace discrimination on the basis of age.  It provides for enforcement both through administrative proceedings before the Secretary of Labor and through private civil actions such as this case.  29 U.S.C. § 626.

The elements of a claim under the ADEA are:

(1)  that the employee is a member of the protected class,
(2)  that the employee is qualified for the position,

---

[1]  Mr. Sbrega is mistakenly described as "Mr. Spera" in plaintiff's motion papers.  (Doc. 43-1.)

(3) that the employee suffered adverse employment action, and

(4) that the circumstances surrounding the action give rise to an inference of age discrimination.

*Abrahamson v. Bd. of Educ.*, 374 F.3d 66, 71 (2d Cir. 2004).

There is no dispute for purposes of this motion that plaintiff can establish the first two elements of the claim. He is over 40 years old which is the minimum age for claims under the ADEA, and there is no dispute that he is qualified to work in the position of sales representative. The disputed elements are (3) and (4). The Post denies that the plaintiff suffered an adverse employment action because he resigned voluntarily. It also denies that there is any evidence to support an inference of age discrimination.

The court begins with the claim of voluntary resignation. The circumstances under which plaintiff left the employ of the Post are in dispute. As defendant's memo in support of the motion for summary judgment indicates, the support for this claim comes from Mr. DeAugustine who states under oath that the plaintiff told him he had resigned. (Doc. 35-9 at 4.) Plaintiff denies making these statements.

The plaintiff specifically said that he did not quit to the Publisher of the Post, John DeAugustine. The plaintiff received unemployment compensation after being terminated by the defendant; this, too the plaintiff would not have received if he had voluntarily left his employment. Ultimately, DeAugustine told the plaintiff to cease coming into work. The plaintiff refused to sign a resignation letter. (Doc. 43-1 at 18 (references to plaintiff's deposition transcript deleted)). Plaintiff relies upon his deposition testimony in which he stated:

> I just told [John DeAugustine] that after 39 years of being a good employee for this paper . . . he said, "You quit." I said, "Why would I do that with five weeks' vacation, good benefit package?" Why would—it would never happen. I told him I was dissatisfied with the [termination] package. It was terrible. It is like a slap in your face when you have been there that long. That is what we basically talked about.

(Doc. 43-2 at 47.) As these excerpts make clear, the circumstances under which plaintiff's employment ended are in dispute. This is an issue which cannot be resolved through summary judgment.

The court turns now to the defendant's claim that even if plaintiff was terminated involuntarily, there is insufficient evidence to support a claim of age discrimination. From the Post's perspective, the termination was the result of the plaintiff's bad attitude towards his supervisor Mr. Aldam and his rude conduct towards Ms. Sells.

### i.    *McDonnell Douglas* **Rubric**

The question of how to prove that an employer has acted out of an improper motive is the central challenge posed by all remedies against discrimination. The development of legal remedies and an increased awareness of the moral wrong of prejudice have caused employers in some cases to avoid disclosing the real reason for a termination or other job action. In other cases, there may be no discriminatory motive at all despite the age, race, gender or other characteristic of the employee. Finally, there are cases in which the motives for the job action are mixed and may include some element of discrimination. Led by the Supreme Court, the lower courts have developed a burden-shifting analysis to guide the trial courts in evaluating the evidence offered in support of an inference of discrimination.

Any discussion of this topic starts with *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), which established the three-step analysis which applies to claims of discrimination filed pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2004 *et seq.* Green was a civil rights activist and a skilled mechanic at a McDonnell Douglas plant. He was laid off for economic reasons. While out of work, he participated in an act of civil disobedience at the plant. When McDonnell Douglas advertised for new workers, he applied and was rejected. The Supreme Court recognized the difficulties of proving unlawful motivation and, in particular, the need to look behind a pretext for an employer's decision:

> [An employee] must be afforded a fair opportunity to show that [an employer's] stated reason for [his or her] rejection was in fact pretext. . . . In short, on the retrial [Green] must be given a full and fair opportunity to demonstrate by competent evidence that the presumptively valid reasons for his rejection were in fact a cover up for a racially discriminatory decision.

*Id.* at 805. The analytical structure imposed by *McDonnell Douglas* requires initial consideration of whether the plaintiff has established a prima facie case of discrimination. Green was able to meet this requirement by showing that he is a member of a protected class, that he was qualified for the job, that he was rejected, and that McDonnell Douglas continued to advertise for workers.

Once the prima facie case has been established, the burden of production of evidence shifts to the defendant who must establish a legitimate, non-discriminatory reason for the adverse employment action. McDonnell Douglas met this requirement through evidence that Green had participated in an illegal protest on plant grounds after his layoff. In the third and final step, the burden of production returns to the plaintiff who must prove that the proffered reason is a pretext which conceals the true discriminatory basis for the employer's action.

Two subsequent Supreme Court decisions considered whether evidence of pretext—that is, evidence casting doubt on the veracity of the employer's non-discriminatory reason for discharge or other adverse action—is sufficient by itself to satisfy the plaintiff's burden of production. In *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993), the Court held that when an employer met its burden of production on the second step by producing evidence of an alternative, legitimate explanation for the job action, the presumption of discrimination disappears. The plaintiff retains the burden of proof which he or she may meet by proving the elements of the original prima facie case. This proof may be supplemented with evidence that the explanation for discharge offered by the employer is false. "[R]ejection of the defendant's proffered reasons will *permit* the trier of fact to infer the ultimate fact of intentional discrimination. . . ." *Id.* at 511. But proof of pretext alone is an insufficient basis for summary judgment in favor of the plaintiff.

The *St. Mary's* decision left unsettled the inverse question of "whether a defendant is entitled to judgment as a matter of law when the plaintiff's case consists exclusively of a prima facie case of discrimination and sufficient evidence for the trier of fact to disbelieve the defendant's legitimate, nondiscriminatory explanation for its action." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000). In *Reeves*, the Court left this issue to case-by-case analysis. "Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory." *Id.* at 148. Conclusive evidence of a non-discriminatory reason or a "weak issue of fact as to whether the employer's reason was untrue" coupled with "abundant and uncontroverted independent evidence that no discrimination had occurred" could support judgment as a matter of law in favor of the defendant. *Id.* at 148.

The *McDonnell Douglas* formula has passed through one final evolutionary stage in ADEA cases.  In *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), the Court further developed the *McDonnell Douglas* analysis in so-called "mixed motive" Title VII cases in which discrimination was one of multiple causes for the employer's action.  If the plaintiff demonstrates that discrimination was a motivating or substantial factor in the employer's action, the burden of persuasion shifts to the employer to show that it would have taken the same action for reasons independent of discrimination.  In 2000, Congress amended Title VII to permit recovery when discrimination was one of several motivating factors.  *See* 42 U.S.C. § 2004-2(m).  This amendment did not apply to the ADEA.

The Supreme Court's decision in *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009), eliminated the *Price Waterhouse* rule in ADEA cases in which there was evidence of mixed motive.  In place of the fourth step in the burden-shifting analysis required for Title VII claims by *Price Waterhouse*, the plaintiff in an ADEA case bears the burden of establishing that age discrimination was a "but" cause of his or her termination or other adverse action.  "A plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision." *Id.* at 177-78.  Proof of a "but for" cause for the adverse action requires evidence from the plaintiff that the adverse action would not have occurred in the absence of discrimination.  Although the *Gross* decision includes language critical of *McDonnell Douglas*, it did not eliminate the three-step analysis in ADEA cases.  Since the *Gross* decision, the Second Circuit has retained the *McDonnell Douglas* analytic structure but only for cases which in obedience to *Gross* can satisfy the "but for" test. *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93 (2010).  Relying upon dictum in *Gross* which leaves open the possibility that the *McDonnell Douglas* test has continued application in ADEA cases in which the plaintiff's evidence is sufficient to establish "but for" causation, the Second Circuit continues to follow the three-step test.

### ii.    Application

Turning to the facts in this case, the first issue which the Court considers is whether plaintiff has established a factual record for purposes of summary judgment which, if believed, contains support for the elements of a prima facie case of age discrimination.  This is step one of the *McDonnell Douglas* analysis.  The defendant does not dispute that plaintiff is a member of

the protected class of older workers (element 1) or that he was qualified for his position (element 2). With respect to proof of an adverse job action (element 3), the plaintiff has provided testimony that, if believed, will prove that he was fired and did not quit voluntarily. For purposes of summary judgment, he has established the third element.

The element principally in dispute is whether he has provided sufficient evidence that his age was a "but for" cause of his termination. Such evidence may be either direct or circumstantial. The plaintiff asserts that he never received the May 21 email from Bridgeport Hospital and that his supervisors unreasonably seized this instance of customer dissatisfaction in order to terminate his employment on the basis of his age. In applying the *McDonnell Douglas* analysis, the court concludes that the dispute over the reason for the plaintiff's dismissal is sufficient to meet the requirements of the prima facie case for purposes of the first step. Plaintiff's assertion that his supervisors at the Post used the dispute over the hospital advertisement to push him out the door is at least some evidence—however thin—of possible age discrimination.

The employer's explanation for the termination is sufficient to meet the requirements of the second step. The employer has produced evidence that it terminated plaintiff due to his loss of temper and poor attitude when called upon to explain his delay in responding to the hospital's email. This non-discriminatory basis for the termination decision satisfies the employer's burden of production.

Turning to the third step—whether the factual dispute over the reason for termination is sufficient to meet the plaintiff's burden of producing evidence of discrimination—the court relies upon the *Reeves* decision and the requirement of case-by-case consideration. As the Supreme Court recognized in *Reeves*, conflicting evidence about the reason for the termination will not always lead to a decision in plaintiff's favor.

In this case, there is no direct evidence of age discrimination such as a statement or practice which shows the Post's intent to remove older workers from its force. Indeed, there is almost no discussion of age in the deposition of the plaintiff. He testified as follows with respect to the impact of age on his termination:

Q.  What was your understanding of why [you were terminated]?

A.  Well, I believe it was they didn't have anybody that was senior that had been there a long time and at my age.

Q.  Did anybody ever say anything about your age?

A.  Not that I recall.

Q.  So you think they asked you to leave because of your age, because you were the only senior person there?

A.  That is partially what I believe.  I think that was it.  I think it was because of it.  It was all contrived with the Bridgeport Hospital thing, and in his office, "You can be replaced."  I will make it easy.  Then when I went in to see John I said, "John, this is totally unacceptable."  He said, "But you quit."  I never said those words.  I don't know where you got that from.  Why would you offer me four weeks['] pay if I quit?  It doesn't make sense.  That is what he said to me.  I said, "No, I did not."

(Doc. 43-2 at 44.)  In addition to this statement of personal belief, plaintiff testified that he suspected age discrimination based on the lay-off of "older employees" and "senior staff" from the composition, printing and classified ad departments.  (*Id.* at 57, 68-69.)  These employees were offered a "package deal" which many accepted.  (*Id.* at 57.)  This practice did not occur in the sales department where plaintiff worked.  (*Id.*)  Finally, plaintiff testified that although the complaint alleges that younger employees who were involved in disagreements with management received more lenient treatment than his, he could not recall who these were.  (*Id.* at 58.)

The memorandum provided by plaintiff's counsel goes somewhat further and seeks to identify three "comparators"—younger employees who engaged in similar or worse behavior and were not fired.  These are Stewart Lahey, Ray Sbrega, and Kim Boath.  (Doc. 43-1 at 19.)  The difficulty with this argument is that two of these employees are older than plaintiff—one by more than 30 years.  The legal argument is not supported by the record.

The plaintiff makes no attempt to provide proof of discrimination through statistical analysis of hiring and termination practices at the Post.  The employees in the sales department are distributed across the spectrum of age with one-third being older than plaintiff.  Although plaintiff stated in his deposition that he believed that older employees were being let go at a higher rate than younger employees, there is no other evidence that this is true.  Since the age and start and finish dates of Post employees is a matter of record, the plaintiff's failure to supply

this information or otherwise demonstrate a statistical bias in favor of younger employees shows that his case cannot be supported through such means.

Plaintiff's claim comes down to this: he disagrees with the circumstances which led up to his termination and identifies the dispute over the email from the Bridgeport Hospital as a pretext. He argues that if he proves that the reason he was fired was fabricated, then the jury may infer that the real reason was age.

Evidence of disparate treatment based upon age is frequently circumstantial and inferential. Few employers who discriminate on the basis of age do so openly. *See Holcomb v. Iona Coll.*, 521 F.3d 130 (2d Cir. 2008). However, standing alone, plaintiff's claim that the Post has been untruthful about the basis for the termination is not evidence that age was the real reason. In this case, the fundamental dispute was whether the initial email from the customer failed to reach the plaintiff or whether he overlooked it in his inbox. The dispute was compounded by a show of temper. These facts are not in dispute. What is missing is any basis on which a reasonable jury could infer that the employer's purported reason for the termination—even if untrue—was a pretext which concealed a discriminatory motive. This inquiry is the type of case-by-case inquiry required by *Reeves*.

The court has reviewed the record closely, especially the deposition testimony of the plaintiff, and can find no basis upon which to infer that age played any part in his termination. There is no claim that the employer's representatives made any statement about his age or the need to move younger employees into his position. Plaintiff fell at the older end of the middle third of the employees in his department. Approximately one-third are older. Two-thirds are younger. There is no evidence that a younger employee was hired to replace him. Although he complains that his supervisor Mr. Aldam was harsh and abrupt with him, he admits that Mr. Aldam behaved that way with all employees and that this conduct was unrelated to age. The principal evidence offered by plaintiff is his contention that the three Post executives who played a role in his termination were wrong about whether he had neglected to respond to the Hospital's email. Assuming for purposes of the motion that plaintiff is right that he never received the email and that his supervisors misunderstood and overreacted to this problem, this alleged "pretext" for his firing provides no basis for inferring that the real reason for the termination is age discrimination.

This is one of those cases anticipated by *Reeves* in which the plaintiff has "created only a weak issue of fact as to whether the employer's reason [for termination] was untrue and there was abundant and uncontroverted evidence that no discrimination had occurred." *Reeves*, 530 U.S. at 148. There is no question that there was a complaint from the hospital and that plaintiff reacted poorly to his supervisor's questions and criticism. Plaintiff's claim is that his conduct was not bad enough to justify his dismissal and therefore his age must be the real reason. But such an inference would equally support any theory about the reason for dismissal such as personal dislike, reduction of the labor force, or performance concerns. In the absence of any evidence that the employer has created a false account of the events leading to the termination, a claim that its representatives' subjective intent was discriminatory—unsupported by other evidence—is insufficient to meet the plaintiff's burden of production at the third step of the *McDonnell Douglas* analysis.

**B.      Claims under the Connecticut Fair Employment Practices Act**

Plaintiff also alleges that he suffered age discrimination in violation of the Connecticut Fair Employment Practices Act, General Statutes, §§ 46a-58(a) *et seq.* (the "CFEPA"). Section 46a-60 prohibits workplace discrimination in terms which closely follow the ADEA. Plaintiff argues that the burden-shifting analysis which the Connecticut Supreme Court has applied in cases filed under the CFEPA is not subject to the limits imposed on the ADEA by the *Gross* decision and that proof that age was one "motivating factor" among two or more contributing to his termination is sufficient to establish liability. He relies primarily on the decision of the Connecticut Supreme Court in *Jacobs v. Gen. Elec. Co.*, 880 A.2d 151 (Conn. 2005).

In *Jacobs*, both the trial judge and the Connecticut Supreme Court sought to apply the *McDonnell Douglas* analysis in an age discrimination case. Both courts agreed that plaintiff had satisfied the elements of the first stage of the test. Both agreed that the defendant-employer had provided evidence of an alternative basis for the plaintiff's discharge unrelated to age. The Connecticut Supreme Court reversed the trial court for supplying jury instructions which required the plaintiff in an age discrimination case to prove *both* that the defendant's reasons for termination were false and merely a pretext *and* that plaintiff's age was a motivating factor for the decision. The Court followed the decision of the Second Circuit in *Gordon v. New York City Bd. of Educ.*, 232 F.3d 111 (2d Cir. 2000), which held that age discrimination could be proved

*either* by direct evidence of retaliatory intent *or* by evidence from the plaintiff that the reasons given by the defendant were untrue.

The *Jacobs* decision in 2005 predates the *Gross* decision by 4 years. The Connecticut Supreme Court has not considered whether the limitations which the *Gross* ruling places on the use of the *McDonnell Douglas* test in the context of the ADEA also apply to the CFEPA. In other words, the question of whether the CFEPA—in contrast to the ADEA—permits a claim of disparate treatment based on mixed motives has not been addressed by the Connecticut Supreme Court. This court does not have to venture a prediction on this issue of state law because the evidence in this case falls short of the standard recognized in *Gordon*. As this decision has already discussed, there is no direct evidence of age discrimination. There is also no circumstantial evidence that other older employees were the subject of discrimination and, therefore, by inference plaintiff was also. The only evidence offered by plaintiff is that the reason for his termination was fabricated. He contends that Ms. Sells failed to understand that he did not receive the Hospital's email and that the presence in the case of a false pretext is sufficient evidence of discrimination standing alone to survive summary judgment.

The *Jacobs* decision does not go this far. It is true that the decision allows for proof of mixed motives in which discrimination and other motives are joined as a basis for a claim of discrimination under the CFEPA. It is more favorable to plaintiffs than the *Gross* decision which requires "but for" causation and rules out "mixed motive" as a basis for liability under the ADEA. In adopting the *Gordon* analysis, however, the *Jacobs* decision retains the dual requirement that the pretext be shown to be false *and* that the plaintiff present some evidence that age—as opposed to any of the countless other factors which may have led to his termination— was at least one of the factors which motivated the employer. *Jacobs*, 880 A.2d at 157.

The rule that proof of pretext also requires proof that discrimination was the real reason for an adverse job action has long been settled in the Second Circuit. The *Gordon* decision adopts the reasoning of the Second Circuit in *Fields v. N.Y. State Office of Mental Retardation and Developmental Disabilities*, 115 F.3d 116 (2d Cir. 1997). In *Fields*, the court stated:

> [A] Title VII plaintiff may not prevail by establishing only pretext, but must prove, in addition, that a motivating reason was discrimination. But though a plaintiff may not prevail only by showing that a proffered explanation is a pretext,

> it is not required to make such a showing.  Since a plaintiff prevails by showing that discrimination was a motivating factor, it can invite the jury to ignore the defendant's proffered legitimate explanation and conclude that discrimination was a motivating factor, whether or not the employer's proffered explanation was also in the employer's mind.

*Id.* at 121.  *Jacobs* makes exactly the same point.  The plaintiff has two routes by which he or she can prove discrimination: by direct evidence or inferentially by demonstrating that the reason offered by the employer was false.  Like *Field* and *Gordon*, *Jacobs* holds that a plaintiff does not have to prove both.  But since the Connecticut Supreme Court adopted *Field* and *Gordon* for purposes of construing the Connecticut statute, there is no reason to predict that the Connecticut Supreme Court would not also follow the requirements imposed in these cases that a plaintiff who chooses to prove pretext must prove two things: that the reason stated for dismissal was false and that discrimination was a motivating factor.

Before leaving the issue, the court must consider one further step in the analysis.  In *Bd. of Educ. of City of Norwalk v. Comm'n on Human Rights and Opportunities*, 266 Conn. 492 (2003), the Connecticut Supreme Court expressed the widely accepted formula that racial discrimination may be proved by showing that the employer's stated reason was false and that there was evidence of intentional discrimination.  Relying upon the decision of the U.S. Supreme Court in *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000), the Connecticut Supreme Court held that although proving that the pretext was false did not always establish discrimination, evidence of falsity, and in particular of mendacity, could be sufficient to support an inference of intentional discrimination.

*Jacobs*, *Gordon*, *Field* and *City of Norwalk* were all written before *Gross* and arise in a setting in which an employer could be found liable in an age discrimination case on a record demonstrating "mixed motives."  The question which has not been answered is whether the restrictions imposed by *Gross* to the ADEA will also be applied by the Connecticut Supreme Court to the CFEPA.  This court has no reason to offer a prediction as to the direction of state law on this issue because the plaintiff's claim fails to meet the requirements of "mixed motive" analysis.

In this case, there is no factual basis on which a reasonable jury could infer that age discrimination played a part in the termination decision.  There is evidence from the plaintiff that

he and other employees were subjected to demanding and abrupt treatment by their sales managers and that he lost his temper, swore and behaved inappropriately on a single occasion, and was discharged in the wake of that conduct. From the plaintiff's perspective, his supervisors overreacted to a minor incident which had its origin in a disagreement with his supervisor about whether he had received the email from the Hospital. Other employees had done worse without being terminated.

Accepting plaintiff's version of the facts as true, these facts in no way implicate his age as the reason for his termination. Any employee of any age could find himself in a disagreement with a supervisor which escalates into a termination. Plaintiff offers no acceptable evidence to link his termination to his age. His comparators—people who did the same thing and fared better—turn out to be both older and younger. Although he suspects that the Post terminated more older people than younger people during a recent period of layoffs and down-sizing, he offers no proof. Similarly, he suspects that management harbored a desire to get rid of older workers, but he offers no statement or pattern of behavior to back up his subjective belief.

A plaintiff's suspicion alone is not sufficient evidence to make out a prima facie case of age discrimination under *Jacobs*. Plaintiff plainly satisfies the requirement that he have evidence that the reason given for his termination was false. His own testimony, if believed, establishes that he did not receive the email from the Hospital and that his two immediate supervisors created the quarrel which led to his termination. But he offers no evidence to show that age was a factor in the original exchange with his supervisor or in the Post's reaction and his ultimate termination.

The court has also considered plaintiff's claim that if he can prove at trial that the Post concocted the events which led to his dismissal, he is entitled to an inference of discrimination for purposes of summary judgment. The difficulty with the argument is that the events leading up to the termination are not disputed. The parties agree about the exchanges between plaintiff and Ms. Sells and Mr. Aldam. They disagree about whether the exchange was the true reason for termination, but there is substantial agreement on all aspects of the dispute over the Hospital email. Plaintiff does not suggest that the Hospital email was a fabrication. They disagree only about whether the email failed to reach plaintiff's inbox. But no one suggests that the Hospital conspired with the Post to make it appear that an email had been sent to plaintiff. These events

16

are entirely different from false pretext cases in which the employer might fabricate the reason for a termination. Events on which the parties are substantially in agreement do not support a claim of lying by the employer.

In place of record evidence, plaintiff offers his subjective belief as stated in his deposition that management wished to get rid of older workers. His suspicion alone is insufficient evidence to meet the *Jacobs* requirement of false pretext *plus* some evidence that age played a role in the termination decision. At most he has demonstrated that he was the victim of a minor workplace dispute which blew up into a firing offense. This evidence is insufficient to establish "mixed motives" including unlawful discrimination under the CFEPA.

### C.    Claims of Retaliatory Discharge

Plaintiff also claims that he was fired in retaliation for protected speech in violation of the CFEPA, C.G.S.A. § 31-51q. In his Memorandum in Opposition to the Post's Motion for Summary Judgment, he states that he complained that at the time of his termination, working conditions had become "very tense" due to pressure from Mr. Aldam and Ms. Sells. Plaintiff claims that Ms. Sells "manufactured a complaint" against him after he complained about how she handled the email from the Bridgeport Hospital as well as her "micromanagement." (Doc. 43-1 at 15.) Plaintiff claims that he then complained to Mr. Aldam and to Mr. DeAugustine about his treatment and the "hostile work environment" at the Post. (*Id.* at 15-16.) Additionally, he advised Mr. DeAugustine that he was in contact with a lawyer (his cousin) and, by implication, would be suing the Post. (*Id.* at 16; Doc. 43-2 at 47.) He claims that he was discharged in retaliation for the complaints against Ms. Sells and Mr. Aldam and because he stated that he had contacted an attorney.

The difficulty with plaintiff's claim is that he identifies no speech or conduct which is *protected* for purposes of the CFEPA. The complaint itself is relatively economical on this issue: "Further the defendant's conduct was in retaliation for the plaintiff's complaints." (Doc. 1-1 ¶ 20.) In his memorandum, plaintiff describes the conflict between himself and his supervisors and his perception that he was treated unfairly. (Doc. 43-1 at 14-16.) This conflict concerned only the work-place dispute already described above. There is no record evidence that plaintiff complained about potential discrimination. Without such a complaint, there is no protected

speech which can form the basis of a claim of retaliation. *See Schumann v. Dianon Sys., Inc.*, 43 A.3d 111, 127 (Conn. 2012) (holding that the First Amendment does not protect from discipline by private employers statements made by the employee in the course of employment duties, in order to "keep[] courts from the constitutionally untenable task of, in essence, having to choose sides in a work-related viewpoint dispute between two private actors").

Plaintiff does allege that he advised Mr. DeAugustine that he was consulting with an attorney. He claims that this information placed the Post on notice that he was asserting a claim of discrimination and that he was terminated in retaliation. The information that a person is in contact with an attorney has never been recognized as a protected statement for purposes of the CFEPA. *See Daley v. Aetna Life & Cas. Co.*, 734 A.2d 112, 120 (Conn. 1999) ("Section 31-51q applies to constitutionally protected speech, that is to say, speech that addresses a matter of public concern."). No reasonable jury could connect the dots in the manner plaintiff suggests. There is no question that plaintiff was in serious difficulties at work after his conversation with Mr. Aldam. There are many reasons why he might wish to speak with an attorney at this painful juncture in his career. But the fact of the potential representation alone is not the equivalent of a positive statement protected by the CFEPA.

### D.     Title VII claims

Plaintiff also claims that he was the subject of discrimination actionable under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. He makes no claim of discrimination on the basis of race, gender, religion or other category protected by Title VII. Age is not a protected category under Title VII and is subject instead to the ADEA. For these reasons, the Title VII claim fails.

### E.     State law claims

Plaintiff also makes claims that he suffered outrageous conduct at the hands of the Post and that as a result the Post is liable for the intentional infliction of emotional distress ("IIED").

Connecticut follows the Restatement of Torts (2d) § 46 in its formulation of outrageous conduct.

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.  Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, Outrageous!

*Carrol v. Allstate Ins. Co.*, 262 Conn. 433, 443 (2003) (citing Restatement (Second) of Torts § 46 cmt. d., at 73 (1965)).

The conduct alleged in this case does not rise to the level of atrocity and intolerability required to satisfy the tort of IIED or outrage.  By his own account, the plaintiff became embroiled in a work-place dispute, used profanity, and was terminated.  He attributes the termination to age discrimination which is independently actionable.  Nothing that he describes is sufficiently outrageous that it would cause a reasonable juror to describe the conduct as outrageous.  In the absence of specific claims of outrageous conduct, the IIED claim fails.

### F.      Negligent Supervision

The claim of negligent supervision of its employees by the Post fails in this case because none of the employees have engaged in acts which give rise to civil liability.  As the previous discussion demonstrates, plaintiff has not demonstrated discrimination, outrageous conduct or any other basis for liability.  The Post cannot be liable for negligent supervision without an underlying showing of tortious conduct by its employees.

### IV.      Conclusion

For the reasons stated above, Hearst's motion for summary judgment (Doc. 35) is GRANTED.

Dated this 16th day of April, 2015.

Geoffrey W. Crawford, Judge
United States District Court